IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROGER GRIFFIN,** | : | **CIVIL NO. 3:24-CV-112** |
| **Plaintiff,** | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JAMES PETRUCCI, et al.,** | : | |
| **Defendants.** | : | |

# MEMORANDUM

## I.  Background and Procedural Background

This *pro se* prisoner lawsuit comes before us for consideration of a series of motions to dismiss, including a motion to dismiss filed by an institutional defendant, the Pennsylvania State Police, and two state police troopers. (Doc. 21). With respect to this motion to dismiss, the well-pleaded facts alleged by the plaintiff, which govern our consideration of the legal sufficiency of this complaint, recite as follows:

Roger Griffin filed this complaint on January 22, 2024. (Doc. 1). At that time Griffin alleged that he was a pretrial detainee awaiting trial on state criminal charges. In fact, court records now reveal that Griffin pleaded guilty to charges of fleeing and eluding police as well as recklessly endangering others and was sentenced in July of 2024. Commonwealth v. Griffin, CP-35-CR-0002237-2023.  Thus, to some degree events in this criminal case have overtaken Griffin's civil lawsuit.

1

Liberally construed, Griffin's *pro se* complaint seemed to advance two legal claims. First, Count I of the complaint lodged a Fourth Amendment claim against the defendants. Specifically, Griffin alleged that the defendants collectively conspired to illegally place an unauthorized warrantless GPS tracking device on his automobile, a device which was utilized in the course of the September 2023 law enforcement encounter which led to his arrest and subsequent conviction. The second count of Griffin's *pro se* complaint lodged a separate Fourth Amendment claim, alleging that a Scranton Police Officer, James Petrucci, engaged in an unnecessary, physically intrusive, and excessive "reach-in" strip search of the defendant at the time of his September 2023 arrest. (Id.)

With his claims framed in this fashion Griffin has named ten individual and institutional defendants in his complaint, including the Pennsylvania State Police and two state police troopers, Travis Graziano and Keith Hubert. As to these defendants, Griffin's complaint was notably lacking in well-pleaded factual details. Griffin did not allege that the troopers engaged in any physically excessive search. Instead, he simply alleged that they were present at the time of his arrest. On the basis of these barebones allegations, Griffin sought $20,000 in damages from the state police defendants and their co-defendants. (Id.)

The state police defendants have now moved to dismiss this complaint. (Doc.

21). This motion to dismiss is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, the motion to dismiss will be granted, in part, and denied, in part, as follows: The motion will be granted with prejudice with respect to the Pennsylvania State Police and Griffin's Fourth Amendment unlawful GPS surveillance conspiracy claims against Troopers Graziano and Hubert. The motion will also be granted with respect to Griffin's Fourth Amendment excessive force and failure to intervene claims, but Griffin will be afforded an opportunity to amend his complaint to state additional well-pleaded facts in support of this claim.

## II. Discussion

### A. Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.

> 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

4

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state

5

a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:

The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally, "where

there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state

7

a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

These legal guideposts govern our consideration of the sufficiency of Griffin's complaint.

## B. The State Police Motion to Dismiss Should Be Granted.

At the outset, in his *pro se* federal civil rights complaint Griffin names the Pennsylvania State Police as an institutional defendant and seeks damages from this agency of state government.

This he may not do. Indeed, Griffin's claims against the state police as an institution run afoul of basic and insurmountable legal obstacles:

> First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the ... States....", U.S. Const. amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).
>
> Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Under the Eleventh Amendment, the Commonwealth's immunity exists as a matter of law unless waived by the state, or expressly and unequivocally abrogated by Congress. Congress has not expressly abrogated this constitutional

immunity with respect to federal civil rights lawsuits against the Pennsylvania State Police and the Commonwealth clearly has not waived its immunity. Quite the contrary, the Commonwealth has specifically by statute invoked its Eleventh Amendment immunity in 42 Pa. Cons. Stat. § 8521(b). This, while Pennsylvania has, by law, waived sovereign immunity in limited categories of cases brought against the Commonwealth in state court; see 42 Pa. Cons. Stat. § 8522, Section 8521(b), which flatly states that: "[n]othing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States." 42 Pa. Con. Stat. § 8521(b).

The constitutional protections afforded to the states under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's criminal justice system like the Pennsylvania State Police. Therefore, the "Eleventh Amendment bars claims for damages against the P[ennsylvania] S[tate] P[olice], a state agency that did not waive its sovereign immunity." Atkin v. Johnson, 432 F. App'x 47, 48 (3d Cir. 2011) (internal citations omitted). Moreover, as a matter of statutory interpretation, the plaintiff cannot bring a damages action against this state agency or state officials in their official capacity since it is also well settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. § 1983, the principal federal civil rights statute. Will, 491 U.S. at 71.

Andresen v. Pennsylvania, No. 1:20-CV-989, 2021 WL 9273956, at *5 (M.D. Pa. July 16, 2021), report and recommendation adopted, No. 1:20-CV-989, 2021 WL 9273955 (M.D. Pa. Nov. 2, 2021).

Simply put, Griffin's federal civil rights claims for damages against the State Police are barred both by the Eleventh Amendment to the United States Constitution and by cases construing the federal civil rights statute, 42 U.S.C. § 1983. Therefore, since the state police as an agency of state government cannot be sued in this fashion

9

in federal court, the State Police should be dismissed as an institutional defendant from this action.

Griffin's illegal GPS surveillance claims against Trooper Graziano and Hubert are also unavailing. Griffin's claim that the troopers conspired with others to engage in a warrantless GPS surveillance of the plaintiff's movements encounters a complete and total legal hurdle which cannot be overcome. The docket reveals that on August 29, 2023, Judge Michael Barrasse issued an Order Authorizing the Installation and Use of a Mobile Tracking Device on Plaintiff's vehicle. (Doc. 23). This immutable fact defeats Griffin's claim that this was an illegal, unauthorized GPS surveillance in violation of the Fourth Amendment.

Beyond this fundamental, fatal factual error, Griffin's conspiracy claims—which consist of nothing more than vague assertions and conclusory labels—are legally insufficient on their face. On this score, the legal standards that govern the sufficiency of civil conspiracy claims are well-settled.

> [I]n order to plead a civil rights action based upon a claim of conspiracy, a plaintiff must plead allegations that are:
>
>> supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make

> averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.

Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). Furthermore, when pleading a conspiracy claim, a plaintiff cannot rely upon subjective suspicion and speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991). Quite the contrary, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred. D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); see also Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) (stating that a conspiracy requires a 'meeting of the minds') (further citation omitted). This holding remains good law following Twombly and Iqbal, which, in the conspiracy context, require 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.' Twombly, 550 U.S. at 556, 127 S. Ct. 1955, 167 L.Ed.2d 929." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) cert. denied, ––– U.S. ––––, 131 S. Ct. 1798, 179 L.Ed.2d 655 (U.S. 2011). We are mindful of these pleading requirements, which are considered together with the standards of pleading applicable to all civil actions in federal court as defined in Twombly and Iqbal, supra.

Johnson v. Davis, No. 3:23-CV-762, 2023 WL 9052027, at *8 (M.D. Pa. Sept. 12, 2023), report and recommendation adopted sub nom. Johnson v. Blue Shirt Davis, No. 3:23-CV-00762, 2023 WL 9052009 (M.D. Pa. Dec. 29, 2023). Judged by these standards, Griffin's conspiracy claims are utterly deficient and the alleged object of the conspiracy—a warrantless GPS surveillance of Griffin's vehicle—is thoroughly rebutted by uncontested evidence. Therefore, this claim fails.

Finally, Griffin brings Fourth Amendment claims stemming from what he alleges was the physically intrusive and excessive reach-in strip search by a Scranton

11

police officer. In this regard, Griffin does not allege that Troopers Graziano and Hubert participated in this search. Rather he simply avers that the troopers failed to intervene and prevent this search. Therefore, his claims against the troopers are properly viewed as Fourth Amendment excessive force, failure to intervene claims.

Viewed through this analytical lens, it is clear that the analysis of Fourth Amendment excessive force, failure to intervene claims is often a fact-bound and fact intensive exercise. As such, these claims impose an obligation upon plaintiffs to assert well-pleaded facts in support of these claims. At the outset, an arrestee's excessive force claim is judged against the Fourth Amendment's reasonableness standard, a multi-facetted, fact specific constitutional benchmark which applies to local police through the Fourteenth Amendment. As we have observed:

> "[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person ... [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1986). Determining whether the force used to effect a seizure was reasonable under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion of the individual's Fourth Amendment interests" against the government's interests in effecting the seizure. Id. at 396, 109 S.Ct. 1865. The test is one of reasonableness, and thus a "court must determine the objective 'reasonableness' of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (citation omitted); see also Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997).

> Included among the factors that may be relevant to this determination, courts may consider "the duration of the [officer's] action, whether the action takes place in the context of effectuating an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. (internal quotations omitted). Courts are instructed that the surrounding events must be considered from "the perspective of a reasonable officer on the scene." Id.

Velardo v. Lewko, No. 3:18-CV-1885, 2019 WL 5095657, at *7–8 (M.D. Pa. Aug. 22, 2019), report and recommendation adopted, No. 3:18-CV-1885, 2019 WL 4391444 (M.D. Pa. Sept. 13, 2019).

Likewise, claims that police failed to intervene and prevent the use of excessive force are often driven by factual context. Courts recognize failure to intervene claims, albeit in a narrow set of circumstances. In order to sustain a failure to intervene claim, the plaintiffs must ultimately plead and prove three elements: "(1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene." Id. at *8. Simply put:

> Under a failure to intervene theory, a police officer may be directly liable under § 1983 if he "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence." Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002). " 'A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force', but only 'if there is a realistic and reasonable opportunity to intervene.' " El, 975 F.3d at 335 (quoting Smith, 293 F.3d at 650-51). "[T]he duration of the incident is key to determining whether there was a reasonable opportunity." Id.

13

Lombardo v. Wescoe, No. 24-CV-1385, 2024 WL 1743764, at *5 (E.D. Pa. Apr. 23, 2024). However, it is incumbent upon the plaintiff to provide at least some factual context to a failure to intervene claim in order to survive a motion to dismiss. Therefore, when a failure to intervene claim is presented in a complaint in a completely undeveloped fashion without any supporting well-pleaded facts dismissal of that claim may be appropriate. Id.; Morgan v. Ortiz, No. 24-CV-1190, 2024 WL 3824866, at *3 (E.D. Pa. Aug. 13, 2024).

In this case, Griffin's failure to intervene claim is stated in a cursory fashion, with the plaintiff simply alleging that the troopers were present at the time of the search and did nothing. (Doc. 1 at 7). As such, Griffin's failure to intervene claim is not sufficiently developed factually since he simply does not state well-pleaded facts about how the troopers allegedly failed to stop the use of force, or that the troopers had a realistic and reasonable opportunity to intervene but did not do so. Morgan, 2024 WL 3824866, at *3. More is need here before his claim may proceed forward.

Thus, we find that Griffin's claims against the state police defendants are legally insufficient as they are currently pleaded by Griffin. It is well-settled that "in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety unless it is clear that granting further leave to amend would be futile or result in undue delay. Alston v.

14

Parker, 363 F.3d 229, 235 (3d Cir. 2004) (citing Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007)).

 Mindful of this principle, we conclude that no form of more artful pleading can save Griffin's institutional liability claims which are barred by the Eleventh Amendment or his illegal surveillance claims based upon what he erroneously alleged was a warrantless GPS surveillance of his vehicle. Therefore, these claims are dismissed with prejudice. However, Griffin's excessive force, failure to intervene claim may potentially be salvaged through more fulsome pleading. Therefore, acting out of an abundance of caution, this claim is dismissed without prejudice to affording Griffin a final opportunity to amend his complaint to state a claim upon which relief may be granted.

 An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
