# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROGER GRIFFIN,** | : | **CIVIL NO. 3:24-CV-112** |
| **Plaintiff,** | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JAMES PETRUCCI, et al.,** | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.   Background and Procedural Background

This *pro se* prisoner lawsuit comes before us for consideration of a series of motions to dismiss, including a motion for judgment on the pleadings, filed by an institutional defendant, the Scranton Police Department, and two Scranton Police Officers, James Petrucci and Kevin Sweeney. (Doc. 34). With respect to this motion, the well-pleaded facts alleged by the plaintiff, which generally govern our consideration of the legal sufficiency of this complaint, recite as follows:

Roger Griffin filed this complaint on January 22, 2024. (Doc. 1). At that time, Griffin alleged that he was a pretrial detainee awaiting trial on state criminal charges. In fact, court records now reveal that Griffin pleaded guilty to charges of fleeing and eluding police as well as recklessly endangering others and was sentenced in July of

1

2024. <u>Commonwealth v. Griffin</u>, CP-35-CR-0002237-2023. Thus, to some degree, events in this criminal case have overtaken Griffin's civil lawsuit.

Liberally construed, Griffin's *pro se* complaint seemed to advance two legal claims. First, Count I of the complaint lodged a Fourth Amendment claim against the defendants. Specifically, Griffin alleged that the defendants collectively conspired to illegally place an unauthorized warrantless GPS tracking device on his automobile, a device which was utilized in the course of the September 2023 law enforcement encounter which led to his arrest and subsequent conviction. The second count of Griffin's *pro se* complaint lodged a separate Fourth Amendment claim, alleging that a Scranton Police Officer, James Petrucci, engaged in an unnecessary, physically intrusive, and excessive "reach-in" strip search of the defendant at the time of his September 2023 arrest. (<u>Id.</u>)

With his claims framed in this fashion, Griffin has named ten individual and institutional defendants in his complaint, including the Scranton Police Department, and two Scranton Police Officers, James Petrucci and Kevin Sweeney. As to these defendants, while Griffin alleges that Defendant Petrucci used excessive force against him at the time of his arrest, the complaint is otherwise notably lacking in well-pleaded factual details. For example, Griffin did not allege that Defendant Sweeney engaged in any physically excessive search. Instead, he simply alleged that Sweeny

2

was present at the time of his arrest. On the basis of these barebones allegations, Griffin sought $20,000 in damages from the police department defendants and their co-defendants. (Id.)

These defendants have now moved for judgment on the pleadings. (Doc. 34). This motion is fully briefed and is, therefore, ripe for resolution. For the reasons set forth below, the motion will be granted, in part, and denied, in part, as follows: The motion will be granted with prejudice with respect to the Scranton Police Department and Griffin's Fourth Amendment unlawful GPS surveillance conspiracy claims against Scranton Police Officers James Petrucci and Kevin Sweeney. The motion will also be granted with respect to Griffin's Fourth Amendment excessive force and failure to intervene claims against Officer Sweeney, but Griffin will be afforded an opportunity to amend his complaint to state additional well-pleaded facts in support of this claim.

Finally, as for the excessive force claim against Officer Petrucci, we will put the parties on notice that we intend to convert this motion into a motion for summary judgment and will set a briefing schedule on this summary judgment motion.

## II. Discussion

### A. Motion for Judgment on the Pleadings-Rule 12(c)

Motions for judgment on the pleadings are governed by Rule 12(c) of the

Federal Rules of Civil Procedure, which provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Granting a 12(c) motion results in a determination on the merits at an early stage in the litigation," and, thus, the movant is required "'to clearly establish [] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Inst. for Scientific Info., Inc. v. Gordon & Breach, Sci. Publishers, Inc., 931 F.2d 1002, 1005 (3d Cir. 1991) (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290-91 (3d Cir. 1988)).

A district court applies the same standard to a motion for judgment on the pleadings as to a motion to dismiss filed pursuant to Rule 12(b)(6). Thus, when reviewing a Rule 12(c) motion for judgment on the pleadings, a district court must view the facts and inferences to be drawn from the pleadings in the light most favorable to the non-moving party. Green v. Fun Asset Mgmt., L.P., 245 F.3d 214, 220 (3d Cir. 2001); Janney Montgomery Scott, Inc. v. Shepard Niles, Inc., 11 F.3d 399, 406 (3d Cir. 1993). This requires a three-step process:

> First, the court must "take[] note of the elements a plaintiff must plead to state a claim." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1947, 173 L.Ed.2d 868 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the presumption of truth." Id. at 1950. Third, whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. This means that [the] inquiry is normally broken into three parts: (1)

identifying the elements of the claim (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

When adjudicating a motion for judgment on the pleadings, the court generally should consider only those allegations contained in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

These legal guideposts govern our consideration of the sufficiency of Griffin's complaint.

> **B.   The Motion for Judgment on the Pleading Will Be Granted, in Part, and Denied, in Part.**
>
> **1. The Claims Against the Scranton Police Department Will Be Dismissed.**

At the outset, in his *pro se* federal civil rights complaint Griffin names the Scranton Police Department as an institutional defendant and seeks damages from this agency.

This he may not do.

Indeed, Griffin's claims against the police department office as an institution run afoul of a longstanding and insurmountable legal obstacle. It has long been held that a police department is not a proper institutional defendant under the federal civil rights statute, 42 U.S.C. § 1983, since police departments serve only as an administrative arm of a municipality, and it is a municipality through which any liability must flow to the police department. Indeed, it has been repeatedly held that a police department is not a "person" for purposes of § 1983 and therefore is not a proper defendant in a § 1983 action. McCreary v. Owen, No. 1:21-CV-1022, 2021 WL 11114949, at *6–7 (M.D. Pa. Dec. 6, 2021), report and recommendation adopted, No. 1:21-CV-01022, 2021 WL 11114480 (M.D. Pa. Dec. 28, 2021); Blackwell v. Middletown Borough Police Dep't, 1:12-CV-825, 2012 WL 6012568 (M.D. Pa. Nov. 16, 2012), report and recommendation adopted, 1:12-CV-825, 2012 WL 6002689 (M.D. Pa. Nov. 30, 2012) (citing Golya v. Golya, 2007 WL 2301085, *9, 2007 U.S. Dist. LEXIS 58093, *29-30 (M.D. Pa. 2007) (explaining that courts within the Third Circuit have concluded that a police department is merely a sub-unit of the local government and is not amenable to suit under § 1983)); Wivell v. Liberty Township Police Dept., 2007 WL 2155540, *2, 2007 U.S. Dist. LEXIS 54306, *5-6 (M.D. Pa. 2007) (explaining that police department not subject to suit in a § 1983 action); Mitros v. Cooke, 170 F.Supp.2d 504, 507 (E.D. Pa. 2001) (city police department is a sub-

unit of the city government that is merely a vehicle through which the city fulfills its policing functions, and is not a separate entity for purposes of suit); Tobin v. Badamo, 3:00CV783, 2000 WL 1880262 (M.D. Pa. Dec. 20, 2000) (municipal police department is not a proper party to a section 1983 action because it is merely a subunit of the city and not a separate corporate entity); McMahon v. Westtown-East Goshen Police Dept., No. Civ.A. 98-3919, 1999 WL 236565 at *4, 1999 U.S. Dist. LEXIS 5551 at *4 (E.D. Pa. Apr. 22, 1999) (citing Johnson v. City of Erie, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993) and Agresta v. City of Philadelphia, 694 F. Supp. 117, 119 (E.D. Pa. 1988)); Johnson v. City of Erie, Pa., 834 F. Supp. 873, 879 (W.D. Pa. 1993).

In light of this consistent case law rejecting efforts to name local departments as institutional defendants in § 1983 actions, the claims against this institutional defendant must be dismissed.

### 2. Griffin's Fourth Amendment Illegal GPS Surveillance and Conspiracy Claims Fail.

Griffin's illegal GPS surveillance claims against Officers Petrucci and Sweeney are also unavailing. Griffin's claim that the police officers conspired with others to engage in a warrantless GPS surveillance of the plaintiff's movements encounters a complete and total legal hurdle which cannot be overcome. The docket reveals that on August 29, 2023, Judge Michael Barrasse issued an Order Authorizing the Installation and Use of a Mobile Tracking Device on Plaintiff's vehicle. (Doc.

7

23). This immutable fact defeats Griffin's claim that this was an illegal, unauthorized GPS surveillance in violation of the Fourth Amendment.

Beyond this fundamental, fatal factual error, Griffin's conspiracy claims—which consist of nothing more than vague assertions and conclusory labels—are legally insufficient on their face. On this score, the legal standards that govern the sufficiency of civil conspiracy claims are well-settled.

> [I]n order to plead a civil rights action based upon a claim of conspiracy, a plaintiff must plead allegations that are:
>
>> supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.
>
> Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). Furthermore, when pleading a conspiracy claim, a plaintiff cannot rely upon subjective suspicion and speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991). Quite the contrary, "to properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred. D.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992); see also Startzell v. City of Philadelphia, 533 F.3d 183, 205 (3d Cir. 2008) (stating that a conspiracy requires a 'meeting of the minds') (further citation omitted). This holding remains good law following Twombly and Iqbal, which, in the conspiracy context, require 'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.' Twombly, 550 U.S. at 556, 127 S. Ct. 1955, 167 L.Ed.2d 929." Great W. Mining & Mineral

> Co. v. Fox Rothschild LLP, 615 F.3d 159, 178 (3d Cir. 2010) cert. denied, ––– U.S. –––, 131 S. Ct. 1798, 179 L.Ed.2d 655 (U.S. 2011). We are mindful of these pleading requirements, which are considered together with the standards of pleading applicable to all civil actions in federal court as defined in Twombly and Iqbal, supra.

Johnson v. Davis, No. 3:23-CV-762, 2023 WL 9052027, at *8 (M.D. Pa. Sept. 12, 2023), report and recommendation adopted sub nom. Johnson v. Blue Shirt Davis, No. 3:23-CV-00762, 2023 WL 9052009 (M.D. Pa. Dec. 29, 2023). Judged by these standards, Griffin's conspiracy claims are utterly deficient and the alleged object of the conspiracy—a warrantless GPS surveillance of Griffin's vehicle—is thoroughly rebutted by uncontested evidence. Therefore, this claim fails.

### 3. **Griffin's Excessive Force and Failure to Intervene Claims Will Be Dismissed, in Part, and Converted, in Part, into a Summary Judgment Motion.**

Finally, Griffin brings Fourth Amendment claims stemming from what he alleges was the physically intrusive and excessive reach-in strip search by Officer Petrucci. In this regard, while the complaint directly alleges an excessive use of force by Defendant Petrucci, Griffin does not allege that Officer Sweeney participated in this search. Rather he simply avers that the officer failed to intervene and prevent this search. Therefore, his claims against the detectives are properly viewed as Fourth Amendment excessive force, failure to intervene claims.

### a. **Legal Guideposts**

Viewed through this analytical lens, it is clear that the analysis of Fourth Amendment excessive force, failure to intervene claims is often a fact-bound and fact intensive exercise. As such, these claims impose an obligation upon plaintiffs to assert well-pleaded facts in support of these claims. At the outset, an arrestee's excessive force claim is judged against the Fourth Amendment's reasonableness standard, a multi-facetted, fact specific constitutional benchmark which applies to local police through the Fourteenth Amendment. As we have observed:

> "[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person ... [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1986). Determining whether the force used to effect a seizure was reasonable under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion of the individual's Fourth Amendment interests" against the government's interests in effecting the seizure. Id. at 396, 109 S.Ct. 1865. The test is one of reasonableness, and thus a "court must determine the objective 'reasonableness' of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (citation omitted); see also Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Included among the factors that may be relevant to this determination, courts may consider "the duration of the [officer's] action, whether the action takes place in the context of effectuating an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. (internal quotations omitted). Courts are instructed that the surrounding events must be

considered from "the perspective of a reasonable officer on the scene." Id.

Velardo v. Lewko, No. 3:18-CV-1885, 2019 WL 5095657, at *7–8 (M.D. Pa. Aug. 22, 2019), report and recommendation adopted, No. 3:18-CV-1885, 2019 WL 4391444 (M.D. Pa. Sept. 13, 2019).

Likewise, claims that police failed to intervene and prevent the use of excessive force are often driven by factual context. Courts recognize failure to intervene claims, albeit in a narrow set of circumstances. In order to sustain a failure to intervene claim, the plaintiffs must ultimately plead and prove three elements: "(1) the officer had a duty to intervene; (2) the officer had the opportunity to intervene; and (3) the officer failed to intervene." Id. at *8. Simply put:

> Under a failure to intervene theory, a police officer may be directly liable under § 1983 if he "fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence." Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002). " 'A police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force', but only 'if there is a realistic and reasonable opportunity to intervene.' " El, 975 F.3d at 335 (quoting Smith, 293 F.3d at 650-51). "[T]he duration of the incident is key to determining whether there was a reasonable opportunity." Id.

Lombardo v. Wescoe, No. 24-CV-1385, 2024 WL 1743764, at *5 (E.D. Pa. Apr. 23, 2024). However, it is incumbent upon the plaintiff to provide at least some factual context to a failure to intervene claim in order to survive a motion to dismiss. Therefore, when a failure to intervene claim is presented in a complaint in a

11

completely undeveloped fashion without any supporting well-pleaded facts dismissal of that claim may be appropriate. Id.; Morgan v. Ortiz, No. 24-CV-1190, 2024 WL 3824866, at *3 (E.D. Pa. Aug. 13, 2024).

### b. Griffin's Failure to Intervene Claim Will Be Dismissed Without Prejudice.

In this case, Griffin's failure to intervene claim against Officer Sweeney is stated in a cursory fashion, with the plaintiff simply alleging that the officer was present at the time of the search and did nothing. (Doc. 1, at 7). As such, Griffin's failure to intervene claim is not sufficiently developed factually since he simply does not state well-pleaded facts about how the officer allegedly failed to stop the use of force, or that the officer had a realistic and reasonable opportunity to intervene but did not do so. Morgan, 2024 WL 3824866, at *3. More is need here before his claim may proceed forward.

Thus, we find that many of Griffin's claims against these defendants are legally insufficient as they are currently pleaded by Griffin. It is well-settled that "in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety unless it is clear that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) (citing Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007)).

Mindful of this principle, we conclude that no form of more artful pleading can save Griffin's institutional liability claims or his illegal surveillance claims based upon what he erroneously alleged was a warrantless GPS surveillance of his vehicle. Therefore, these claims are dismissed with prejudice. However, Griffin's failure to intervene claim against Officer Sweeney may potentially be salvaged through more fulsome pleading. Therefore, acting out of an abundance of caution, this claim is dismissed without prejudice to affording Griffin a final opportunity to amend his complaint to state a claim upon which relief may be granted.

### c. The Motion to Dismiss Griffin's Excessive Force Claim Against Defendant Petrucci Will Be Converted to a Summary Judgment Motion.

Finally, citing police body camera footage, and police incident reports, Defendant Petrucci asserts that Griffin's excessive force claim also fails as a matter of law. Petrucci invites us to consider these evidentiary materials through this motion for judgment on the pleadings because the defendant has attached the video and police reports to the answer to Griffin's complaint.

While the defendant's efforts to use the expedient of attaching these exhibits to the answer in order to address this issue through a motion for judgment on the pleadings is imaginative, it is in our view a bridge too far. These materials are evidentiary matters which fall far outside the pleadings. However, when presented

with such materials, the Court has a tool at its disposal for addressing legal defenses which rest upon matters outside the pleadings.

> In most cases, when considering documents outside of the complaint, a court typically should convert a motion to dismiss into a motion for summary judgment. Rule 12(d) of the Federal Rules of Civil Procedure specifically provides for such conversion as follows:
>
>> If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided for in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.
>
> This conversion requirement ensures "that the motion is governed by the rule specifically designed for the fair resolution of the parties' competing interests at a particular state of the litigation." Global Network Communications, Inc. v. City of N.Y., 458 F.3d 150, 155 (2d Cir. 2006). Additionally, conversion provides notice and allows the non-moving party to contest the evidence submitted by the movant. Id.
>
> A district court must provide adequate notice of the conversion and allow the parties a reasonable opportunity to submit materials to support or oppose summary judgment. Hilfirty v. Shipman, 91 F.3d 573, 578 (3d Cir. 1996) (quoting Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989)).
>
> Notice must be unambiguous, it must "fairly apprise" the parties of the court's intent to convert the motion to dismiss to a motion for summary judgment, and it should be expressly provided by the court. In Re Rockefeller Ctr. Prop., Inc. Sec. Litig., 184 F.3d 280, 288 (3d Cir. 1999). Further, courts have incorporated the notice provision of Federal Rule of Civil Procedure 56 into the "reasonable opportunity" language of 12(d). Hancock Indus., Inc. v. Schaeffer, 811 F.2d 225, 229 (3d Cir. 1987). Therefore, the parties are generally entitled to [at least] ten days

14

in which to submit material pertinent to the converted motion for summary judgment. Id.

Dorsey v. Pennsylvania Dep't of Corr., No. 1:16-CV-588, 2016 WL 6124420, at *3 (M.D. Pa. Oct. 20, 2016). Applying these benchmarks, courts have frequently converted motions to dismiss claims arising out of videotaped police encounters to summary judgment motions when we are invited to consider police camera footage. See Castro v. Debias, No. 3:23CV342, 2024 WL 3993234, at *2 (M.D. Pa. Aug. 29, 2024).

This is the path we will follow here with respect to the sole remaining claim in this case, Griffin's excessive force claim against Officer Petrucci. We will place the parties on notice that we are converting this motion into a summary for summary judgment and set a schedule for the briefing of this summary judgment motion.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: October 28, 2024