## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROGER GRIFFIN,** | : | **CIVIL NO. 3:24-CV-112** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JAMES PETRUCCI, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>MEMORANDUM OPINION</u>

### I.    <u>Factual Background and Procedural History</u>

#### A. <u>Procedural History</u>

We now write what may be the final chapter in this *pro se* prisoner lawsuit as we consider a motion filed by the sole remaining defendant, James Petrucci, relating to a search of the plaintiff Roger Griffin, incident to Griffin's arrest on state charges. By way of background, Roger Griffin filed this complaint on January 22, 2024. (Doc. 1). At that time, Griffin alleged that he was a pretrial detainee awaiting trial on state criminal charges. In fact, court records now reveal that Griffin pleaded guilty to charges of fleeing and eluding police as well as recklessly endangering others and was sentenced in July of 2024. <u>Commonwealth v. Griffin</u>, CP-35-CR-0002237-2023. Thus, to some degree, events in this criminal case have overtaken Griffin's civil lawsuit.

1

Liberally construed, Griffin's *pro se* complaint seemed to advance two legal claims. First, Count I of the complaint lodged a Fourth Amendment claim against the defendants. Specifically, Griffin asserted that the defendants collectively conspired to illegally place an unauthorized warrantless GPS tracking device on his automobile, a device which was utilized in the course of the September 2023 law enforcement encounter which led to his arrest and subsequent conviction. The second count of Griffin's *pro se* complaint lodged a separate Fourth Amendment claim, alleging that a Scranton Police Officer, James Petrucci, engaged in an unnecessary, physically intrusive, and excessive "reach-in" strip search of the defendant at the time of his September 2023 arrest. (Id.)

With his claims framed in this fashion, Griffin named ten individual and institutional defendants in his complaint, including the Scranton Police Department, and two Scranton Police Officers, James Petrucci and Kevin Sweeney. As to these defendants, while Griffin alleges that Defendant Petrucci used excessive force against him at the time of his arrest, the complaint was otherwise notably lacking in well-pleaded factual details. For example, Griffin did not allege that Defendant Sweeney engaged in any physically excessive search. Instead, he simply alleged that Sweeney was present at the time of his arrest. On the basis of these barebones allegations, Griffin sought $20,000 in damages from the police department defendants and their

co-defendants. (Id.)

These defendants moved for judgment on the pleadings. (Doc. 34). Upon consideration we granted this motion, in part, and deferred consideration of the motion, in part. (Docs. 48, 49). Specifically, the motion was granted with prejudice with respect to the Scranton Police Department and Griffin's Fourth Amendment unlawful GPS surveillance conspiracy claims against Scranton Police Officers James Petrucci and Kevin Sweeney. (Id.) The motion was also granted with respect to Griffin's Fourth Amendment excessive force and failure to intervene claims against Officer Sweeney, but Griffin was afforded an opportunity to amend his complaint to state additional well-pleaded facts in support of this claim. (Id.) Griffin never amended his complaint. Therefore, we later dismissed this claim with prejudice. (Doc. 62). Finally, as for the excessive force claim against Officer Petrucci, which invited us to examine evidence outside the pleadings, including a police body camera video of Officer Petrucci's search of Griffin, we put the parties on notice that we were converting this motion for judgment on the pleadings into a motion for summary judgment and set a briefing schedule on this summary judgment motion. (Doc. 49).

That briefing schedule has now passed. The parties have fully briefed this motion as a motion for summary judgment. (Docs. 50-55). Accordingly, this motion is now ripe for resolution.

For the reasons set forth below, this motion for summary judgment will be granted.

### B. **Factual Background**

With respect to Griffin's Fourth Amendment, excessive force claim against Officer Petrucci the evidence reveals the following, essentially undisputed facts: This civil lawsuit stems out of a state criminal investigation into alleged fentanyl trafficking by Roger Griffin. As part of that investigation on August 25, 2023, the Lackawanna County District Attorney's Office filed an Application for an Order Authorizing the Installation and Use of a Mobile Tracking Device on Griffin's car. In this Application, the District Attorney's Office averred that the Scranton Police Department and the District Attorney's Office were conducting an ongoing investigation into drug trafficking involving Griffin and others. In the affidavits appended to this application, police described source information they had received which indicated that Griffin was using a Gold 2020 Chevrolet Malibu sedan, bearing a Pennsylvania Registration #LYV9436, VIN #1G1ZD5ST1LF043823 to travel frequently to New York in order to procure fentanyl, in order to transport these drugs to Scranton for distribution. (Doc. 53, Ex. A). Following the submission of the Application by the District Attorney's Office, on August 29, 2023, Judge Michael Barrasse issued an Order Authorizing the Installation and Use of a Mobile Tracking

Device on Griffin's car finding that "there is Probable Cause to believe that criminal activity has been, is or will be in progress and that the use of a mobile tracking device attached to or placed on a vehicle identified as a 2020 Chevrolet Malibu Sedan Vehicle Identification Number 1G1ZD5ST1LF043823, Pennsylvania Registration Number LYV9436, will yield information relevant to the investigation of the criminal activity." (Id. Ex. B, p. 1.)

Griffin was arrested by police on September 22, 2023 following a traffic stop. Griffin fled the scene of this stop, conducting a high-speed chase through a residential neighborhood in West Scranton. This police encounter, arrest, and the search of Griffin incident to this arrest were captured on police body camera footage. (Doc. 53, Ex. C.) This evidence reveals that Griffin was initially pulled over by police for a traffic violation. However, Griffin fled the scene, leading officers on chase through West Scranton in which he travelled at speeds of up to 70 miles per hour in an effort to elude law enforcement. This vehicle pursuit came to an end when Griffin drove his car into a dead end on Farr Street. Griffin then fled the vehicle on foot, leaving his 3-year-old daughter alone in the vehicle. Griffin hid in a wooded area near rail tracks for approximately 30 minutes before he was apprehended. Once Griffin was taken into custody he was searched incident to his arrest.

This search, which forms the gravamen of Griffin's Furth Amendment claim

against Defendant Petrucci, was captured in its entirety on a police body camera video. (Id., Ex. C.)  That video revealed a brief physical encounter between Griffin and the police officer were lasted approximately one minute and thirty seconds. (Id., see video at the 33 min:13 sec mark to 34 min: 40 sec.)

At the time of this search incident to his arrest for fleeing and eluding, Griffin was handcuffed. He appears to be dressed in a denim jacket, T-shirt, gray sweatpants, and gray underwear. Contrary to Griffin's assertions in his pleadings, he was not subjected to a public strip search. Instead, the video shows that police lifted his T-shirt from his torso briefly and then pulled his sweatpants, and underwear a few inches away from his waist for several seconds, as they looked down his pants in order to see if they could observe any concealed weapons or contraband. Police then engaged in a pat down search of Griffin's jacket, T-shirt, sweatpants and pockets. In the course of this pat down search police inspected Griffin's pockets and carefully patted down the exterior of his clothing for any illicit material that may have been hidden on his person. This pat down search included an exterior pat down of the pant legs, thighs and crotch of Griffin's sweatpants, a process which was completed in less than two minutes. At no time did police disrobe Griffin, pull his pants down, or physically touch his exposed genitals.

Griffin later pleaded guilty to charges of fleeing and eluding police as well as

recklessly endangering others in connection with this incident and was sentenced in July of 2024. <u>Commonwealth v. Griffin</u>, CP-35-CR-0002237-2023.

## II.    <u>Discussion</u>

### A. <u>Motion for Summary Judgment – Standard of Review</u>

We  have converted Officer Petrucci's motion into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which provides that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Through summary adjudication, a court is empowered to dispose of those claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." <u>Univac Dental Co. v. Dentsply Int'l, Inc.</u>, 702 F.Supp.2d 465, 468 (M.D. Pa. 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. <u>Id.</u>, at 248-49.

The moving party has the initial burden of identifying evidence that it believes

shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. V. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006), accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id., at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual

disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F. Supp. 474, 482 (D.N.J. 1995). Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark New Jersey v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982); see Sunshine Books, Ltd. V. Temple University, 697 F.2d 90, 96 (3d Cir. 1982). "[A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

Thus, it is emphatically not the province of the court to weigh evidence or assess credibility when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable

inferences in the light most favorable to the non-moving party. <u>Big Apple BMW, Inc.</u> <u>v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. <u>Id.</u> Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> <u>Big Apple</u> <u>BMW</u>, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

<u>Id.</u> In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita</u> <u>Elec. Indus. Co., Ltd. V. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); <u>NAACP v. North Hudson Reg'l Fire & Rescue</u>, 665 F.3d 464, 476 (3d Cir. 2011).

Furthermore, in a case such as this, where critical events at issue have

10

been captured on videotape, the court is obliged to consider that
videotaped evidence in determining whether there is any genuine
dispute as to material facts. In fact, it is clear that, in this setting, we
must view the facts in the light depicted by the videotape. See Scott v.
Harris, 550 U.S. 372, 380–81, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007)
(reversing court of appeals ruling with respect to application of qualified
immunity in an excessive force case, noting that the court of appeals
erred by accepting a version of facts that was shown to be a "visible
fiction" and admonishing that the lower court "should have viewed the
facts in the light depicted by the videotape."). This principle applies with
particular force to . . . excessive force claims which entail videotaped
encounters with [police]. Where a videotape refutes an inmate's claims
that excessive force was used against him, and the video evidence does
not permit an inference that [defendants]s acted maliciously and
sadistically, summary judgment is entirely appropriate. Tindell v.
Beard, 351 F. App'x 591 (3d Cir.2009).

McCullon v. Brouse, No. 3:10-CV-1541, 2012 WL 4504504, at *10 (M.D. Pa. Sept.

7, 2012), report and recommendation adopted, No. 3:10-CV-1541, 2012 WL

4571019 (M.D. Pa. Oct. 1, 2012).

These legal guideposts govern our consideration of the legal sufficiency of

Griffin's remaining claim against Officer Petrucci.

## B. **Guiding Fourth Amendment Principles**

Griffin's sole remaining allegation in this case is a Fourth Amendment claim

stemming from what he alleges was an unconstitutionally physically intrusive and

excessive reach-in strip search by Officer Petrucci. The substantive legal standards

which govern this excessive force claim can be simply stated. An arrestee's excessive

force claim, like the claims made here, is judged against the Fourth Amendment's

11

reasonableness standard, a constitutional benchmark which applies to local police

through the Fourteenth Amendment. Thus:

> "[A] free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person ... [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1986). Determining whether the force used to effect a seizure was reasonable under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion of the individual's Fourth Amendment interests" against the government's interests in effecting the seizure. Id. at 396, 109 S.Ct. 1865. The test is one of reasonableness, and thus a "court must determine the objective 'reasonableness' of the challenged conduct, considering the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Couden v. Duffy, 446 F.3d 483, 497 (3d Cir. 2006) (citation omitted); see also Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997). Included among the factors that may be relevant to this determination, courts may consider "the duration of the [officer's] action, whether the action takes place in the context of effectuating an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. (internal quotations omitted). Courts are instructed that the surrounding events must be considered from "the perspective of a reasonable officer on the scene." Id.

Samuels v. Pocono Mountain Reg'l Police Dep't, No. 3:13-CV-2922, 2015 WL

10567834, at *3 (M.D. Pa. Dec. 17, 2015), report and recommendation adopted in

part, No. 3:13-CV-02922, 2016 WL 1221831 (M.D. Pa. Mar. 29, 2016).

When evaluating such Fourth Amendment claims in the context of a search

incident to the arrest of a suspect like Griffin, several legal benchmarks guide us.

First, it is undeniable that police may conduct a search of an arrestee incident to his lawful arrest. Indeed, for the past fifty five years the Supreme Court has expressly upheld warrantless searches of suspects incident to their arrest, finding that: "There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'". Chimel v. California, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040, 23 L. Ed. 2d 685 (1969). Thus, the search of a suspect like Griffin incident to his arrest, standing alone, does not offend the Fourth Amendment.

There are, however, some Fourth Amendment limitations regarding how such a search incident to arrest may be conducted. For example, the Supreme Court has stated that "the interests supporting a search incident to arrest would hardly justify disrobing an arrestee on the street." Illinois v. Lafayette, 462 U.S. 640, 645, 103 S. Ct. 2605, 2609, 77 L. Ed. 2d 65 (1983). However, the very fact specific nature of the Fourth Amendment's reasonableness requirement draws very few bright line rules concerning the conduct of such searches beyond this prohibition against the public disrobing of suspects.

In particular, courts have had occasion to frequently consider the constitutional reasonableness of what are colloquially referred to as "reach-in" searches; that is, searches in which an officer reaches into a suspect's clothing to recover some item of suspected contraband. While the outcomes of these cases are often fact dependent,

13

a few overarching principles have emerged. Generally speaking, absent some specific and aggravating circumstances[1] courts have sustained discrete reach-in searches as reasonable under the Fourth Amendment. These cases recognize a stark law enforcement reality: "Some physical contact is permissible, and indeed unavoidable, when police reach into a suspect's pants to remove [suspected contraband] the suspect has chosen to hide there." United States v. Williams, 477 F.3d 974, 976 (8th Cir. 2007) citing United States v. Williams, 209 F.3d 940, 942, 944 (7th Cir.2000) (upholding the removal of crack cocaine from area of suspect's buttocks); State v. Smith, 342 N.C. 407, 464 S.E.2d 45, 46 (1995) (upholding the removal of cocaine from underneath suspect's scrotum). In upholding the reasonableness of these reach-in searches court have generally considered "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." United States v. Williams, 477 F.3d at 975. Applying this analytical paradigm, courts have frequently sustained

---

[1] For example, in United States v. Edwards, 666 F.3d 877, 881 (4th Cir. 2011), the primary case relied upon by Griffin, the court found a reach-in search to be unreasonable when held Edwards' pants and underwear open while Bailey put on gloves, while an officer took a knife that he had in his possession and cut a sandwich baggie off Edwards' penis with the knife. It seems clear, however, that the knife wielding aspect of this search played a crucial role in the court's reasonableness determination. No such graphic facts are present here.

police reach-in searches incident to the arrest of suspects as reasonable. See e.g., United States v. Simpson, 416 F. App'x 390, 392 (5th Cir. 2011) (reach-in search of suspect's pants); United States v. Ashley, 37 F.3d 678, 682 (D.C. Cir. 1994) (holding reasonable a search in which police officer removed bag of drugs from suspect's underwear, where officer followed suspect from public bus station to side of station on street outside, and stood in front of suspect during search); Smith v. Vill. of Brockport, No. 19-CV-6404 CJS, 2022 WL 597465, at *22 (W.D.N.Y. Feb. 28, 2022); United States v. Santiago, No. 4:17CR17, 2017 WL 2290140, at *3 (E.D. Va. May 25, 2017), aff'd, 744 F. App'x 135 (4th Cir. 2018); United States v. Mussmann, No. 4:16 CR 95 CDP (JMB), 2016 WL 4691291, at *9 (E.D. Mo. Aug. 4, 2016); United States v. Gordon, No. 2:04-CR-688, 2008 WL 3540007, at *4 (D. Utah Aug. 13, 2008); State v. Jenkins, 82 Conn.App. 111, 842 A.2d 1148, 1151, 1158 (2004) (holding that reach-in search was reasonable where police searched suspect on side of a restaurant, out of public view, by pulling pants and underwear away from suspect's body to retrieve drugs).

It is against these legal guideposts that we evaluate Griffin's Fourth Amendment claim.

## C. **This Search Was Constitutionally Reasonable**

Analyzing this particular police search, excessive force claim in light of the immutable evidence, the police body camera video, it is apparent that Griffin's claim fails as a matter of law. At the outset, to the extent that Griffin alleges that police disrobed him in a public place, this allegation is a "visible fiction" when viewed in light of the facts by the videotape. Griffin was not disrobed.

Indeed, characterizing what transpired during the 90 seconds in which Griffin was searched as a "reach-in" search overstates the degree of physical intrusion which took place here. "Reach-in" searches typically involve some physical contact by a police officer with an arrestee which takes place within the arrestee's undergarments. What transpired here would more aptly be described as a "peek-in, pat-down" search. Police pulled Griffin's sweatpants and underwear a few inches away from his waistband in order to determine whether he had concealed contraband or some dangerous article in his pants. Police then conducted a pat-down search of Griffin outside his garments to confirm that nothing was hidden in his clothing.

When this search is considered in light of the guiding benchmarks for reasonableness—"the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted," United States v. Williams, 477 F.3d at 975—it is apparent that the search passes

constitutional muster under the Fourth Amendment. The intrusion here—a brief visual inspection inside Griffin's pants coupled with a pat-down search—was relatively minimal. The entire search took only 90 seconds. Moreover, the search was fully justified by the information police possessed at the time of Griffin's arrest. By this time police had been informed that Griffin was trafficking in fentanyl; the plaintiff had led authorities on a high speed pursuit through residential streets; and Griffin had abandoned his car—and 3 year old child—in an attempt to flee on foot. Taken together, this constellation of circumstances reasonably supported an inference that Griffin may have concealed or attempted to dispose of evidence, or contraband. Finally, the search took place in the evening at what appears to have been the dead end of a residential street adjacent to undeveloped land and a railway. Moreover, the searching officer and other police would have at least partially shielded Griffin during this brief search. Taken together, these factors as viewed through the unblinking eye of the police body camera reveal this to have been a reasonable, legitimate search incident to arrest. Therefore, Griffin's Fourth Amendment claim against Officer Petrucci fails as a matter of law.

### D. **The Defendant is Entitled to Qualified Immunity**

But even if we found that Griffin had stated a colorable constitutional claim, the plaintiff still would not be able to sustain a claim for damages against Officer

Petrucci since the defendant's actions were clearly cloaked in qualified immunity.[2]

The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244).

Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

---

[2] We note that in proper cases the court may consider the question of qualified immunity *sua sponte.* Vorobyev v. Wolfe, 638 F. Supp. 3d 410, 427 (M.D. Pa. 2022). This is one such case.

Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). The official seeking qualified immunity has the burden of establishing their entitlement to the affirmative defense. Halsey v. Pfeiffer, 750 F.3d 273, 288 (3d Cir. 2014) (citing Reedy v. Evanson, 615 F.3d 197, 223 (3d Cir. 2010)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." Mullenix, 577 U.S. at 11. To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the right "at a high level of generality." Id. (quoting Al-Kidd, 563 U.S. at 742, 131 S.Ct. 2074.) Rather, the analysis should focus on "whether the violative nature of particular conduct is clearly established." Id. (quoting Al-Kidd, 563 U.S. at 742). On this score, "[t]he relevant,

dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. See Davis v. Scherer, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right.").

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)). Unpublished cases cannot establish a right because they do not constitute binding authority. El v. City of Pittsburgh, 975 F.3d 327, 340 (3d Cir. 2020). In rare cases, the unlawfulness of a

20

government official's conduct may be established from the obviously unlawful nature of the defendant's conduct "even though existing precedent does not address similar circumstances." Wesby, 138 S. Ct. at 590 (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

In this case, given the immutable evidence depicted in the police body camera video it cannot be said that binding Supreme Court precedent or a robust legal consensus condemned the type of limited "peek-in, pat-down" search conducted by Officer Petrucci. Quite the contrary, as we have noted, the preponderance of cases have upheld somewhat more intrusive "reach-in" searches incident to arrest as reasonable law enforcement measures. In light of the growing legal consensus endorsing the actions taken here by police during their search of Griffin incident to his arrest, it cannot be said that existing precedent placed the constitutional question asserted by Griffin beyond debate. Therefore, the police conduct falls squarely within that range of discretionary behavior that the qualified immunity doctrine is designed to protect, and Griffin's Fourth Amendment claim runs afoul of this qualified immunity.

We are not alone in this view that police conducting a reach-in search incident to arrest are entitled to qualified immunity. Quite the contrary, other courts have held that police who engage in reach in searches are entitled to qualified immunity given

the unsettled state of the law. <u>Farkarlun v. Hanning</u>, 855 F. Supp. 2d 906, 912 (D. Minn. 2012). So it is here.

Accordingly, for the foregoing reasons, this last remaining claim advanced by the plaintiff fails as a matter of law when considered on summary judgment. Therefore, this case will be dismissed.

An appropriate order follows.

<u>*S/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

DATED: July 15, 2025

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROGER GRIFFIN,** | : | **CIVIL NO. 3:24-CV-112** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **JAMES PETRUCCI, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## <u>ORDER</u>

AND NOW, this 15th day of July 2025, for the reasons set forth in the accompanying Memorandum Opinion, the defendant's motion for judgment on the pleadings which we have converted into a motion for summary judgment is GRANTED. The plaintiff's complaint is DISMISSED, and the clerk is DIRECTED to CLOSE this file.

<u>*S/ Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge

23